IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

DENA L. GRINSLADE,                )
                                  )
            Plaintiff,            )
                                  )
v.                                )   Case No. CIV-06-253-KEW
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of Social            )
Security Administration,          )
                                  )
            Defendant.            )

## OPINION AND ORDER

Plaintiff Dena L. Grinslade (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant - taking into account his age, education, work experience, and RFC - can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on June 3, 1963 and was 42 years old on the date of the ALJ's decision. She completed her high school education and some college. Claimant previously worked as a caregiver and fuel desk clerk/cashier. Claimant alleges an inability to work beginning in October of 2003, due to massive obesity, COPD, depression and anxiety, headaches, diabetes, and restless leg syndrome.

### Procedural History

On December 12, 2003, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and Title XVI of the Social Security Act (42 U.S.C. § 1381,

3

*et seq.*). Claimant's applications for benefits were denied initially and upon reconsideration. Claimant appeared at a hearing before ALJ Michael A. Kirkpatrick on July 19, 2005 in Hugo, Oklahoma. By decision dated October 18, 2005, ALJ Kirkpatrick found that Claimant was not disabled during the relevant time. The Appeals Council denied Claimant's request for review on April 24, 2006. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant's medical conditions were severe, they did not meet a Listing and Claimant retained a residual functional capacity ("RFC") to allow him to perform a full range of sedentary work with no additional non-exertional limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error requiring reversal in (1) failing to afford Claimant's treating physician's opinion controlling weight; (2) failing to re-contact Claimant's treating physician; (3) failing to engage in a proper credibility determination; (4) failing to develop the record on Claimant's alleged mental impairment; and (5) failing to consider Claimant's non-exertional impairments at step five, making the application of

4

the Grids inappropriate.

**Weight Given to Claimant's Treating Physician's Opinion**

Claimant argues the ALJ failed to properly analyze the opinion of her treating physician, Dr. Gastorf. Claimant was diagnosed with cervical cancer in 1998 and underwent a hysterectomy. In October of 2000, Claimant injured her ankle. Her weight was noted as 315 pounds. (Tr. 164). In October of 2002, Claimant was seen by Melissa Gastorf, D.O. to receive medication and treatment for depression. After conducting a Beck Depression Scale evaluation, Dr. Gastorf diagnosed Claimant with moderate depression and prescribed Zoloft. (Tr. 310-311). In November of 2002, Claimant returned to Dr. Gastorf for a PAP smear. Dr. Gastorf noted Claimant's depression was better since taking Zoloft. Claimant was obese at this visit and the physician was unable to palpate her abdomen.

In April of 2003, Claimant was attended by Dr. Gastorf, seeking treatment for her weight gain. Claimant's weight was registered at 340 pounds. Dr. Gastorf diagnosed Claimant with obesity, weight gain, fatigue, and depression. Claimant was maintained on Zoloft. (Tr. 305-06, 312). Over the remainder of the year, Dr. Gastorf continued to see Claimant for depression and obesity. Her weight fluctuated from 302 pounds to 357 pounds during this period. (Tr. 297-312).

In November of 2003, Claimant was seen by Dr. Gastorf

complaining of flu symptoms. She weighed 350 pounds. (Tr. 295-296). Claimant was admitted to the hospital with an initial diagnosis of acute bronchitis and chronic COPD. Id. Chest x-rays revealed severe signs of COPD. Claimant was placed on forced air treatment. With difficulty, Claimant was weaned off of the machine. At discharge, her diagnosis was severe COPD, diabetes mellitus Type II, and a history of tobacco abuse. (Tr. 174-175).

Dr. Gastorf attended Claimant on numerous occasions over the succeeding months for continued treatment of COPD, diabetes, obesity, and depression. These visits occurred in December 12, 2003, December 19, 2003, January 2, 2004, February 2, 2004, March 30, 2004, July 20, 2004, August 17, 2004, August 24, 2004, September 8, 2004, September 20, 2004, October 20, 2004, December 13, 2004, December 16, 2004, December 29, 2004, February 24, 2005, March 10, 2005, and April 8, 2005. (Tr. 287-88, 284-85, 282-83, 279-80, 271-72, 379-80, 377-78, 375-76, 373-74, 371-72, 369-70, 367-68, 365-66, 363-64, 361-62, 359-60, 357-58).

On June 22, 2005, Dr. Gastorf completed a Medical Assessment of Ability to Do Work Related Activities (Physical) form in relation to Claimant. (Tr. 383). On that form, Dr. Gastorf concluded Claimant could (1) sit 2 hours of an 8 hour day; (2) stand for "short periods of time"; (3) walk "short distances" for a total of 1 hour of an 8 hour work day; (4) could not work an 8 hour day at any level, even with alternative sitting and standing

and breaks; (5) could lift under 10 lbs.; (6) could not lift repetitively; (7) could perform simple grasping with both hands; (8) could not push or pull arm controls; (9) could not engage in fine manipulation; (10) could not use her feet for movements as in pushing leg controls; and (11) needed to elevate her legs 3-4 hours daily. Under the "comments" section of the form, Dr. Gastorf stated "pt cannot sit for longer than 2 hours at a time & then has to get up & walk due to her lungs. She can only walk short distances before getting short of breath." (Tr. 383).

A Residual Functional Capacity Assessment Form (Mental) was prepared on Claimant by Lloyd Bergman, "therapist." Mr. Bergman concluded Claimant suffered from Generalized Anxiety Disorder and Panic Disorder/Agoraphobia. He found Claimant was moderately limited in her (1) ability to remember locations and work-like procedures; (2) ability to understand and remember detailed instructions; (3) ability to carry out very short and simple instructions; (4) ability to carry out detailed instructions; (5) ability to sustain an ordinary routine without special supervision; (6) ability to make simple work-related decisions; (7) ability to interact appropriately with the general public; and (8) ability to respond appropriately to changes in the work setting. Mr. Bergman shows Claimant with marked limitations in her (1) ability to maintain attention and concentration for extended periods; (2) ability to perform activities within a schedule, maintain regular

7

attendance, and be punctual within customary tolerances; (3) ability to work in coordination with or proximity to others without being distracted by them; (4) ability to complete a normal work day and work week without interruptions from psychologically based symptoms to perform at a consistent pace without an unreasonable number and length of rest periods; (5) ability to accept instructions and respond appropriately to criticism from supervisors; and (6) ability to set realistic goals or make plans independently of others. (Tr. 384-388).

Mr. Bergman states in the Functional Capacity Assessment portion of the report that Claimant "struggles with enclosed spaces or large number of people. Has extreme difficulty with "critical" supervisors. Has difficulty working under stress. Has emotional & physical defects that limit ability to sustain work." (Tr. 388).

In his decision, the ALJ found Dr. Gastorf's assessment, if accepted, "would compel a conclusion that claimant was disabled." (Tr. 24). However, he concluded Dr. Gastorf's findings are "(1) not well supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) are not consistent with other substantial medical and non-medical evidence of record." Consequently, the ALJ declined to give Dr. Gastorf's assessments "controlling weight." Id.

It appears the ALJ restricted his examination of the record with regard to Dr. Gastorf's history and experience with Claimant

8

to the Medical Assessment of Ability to Do Work Related Activities (Physical) form she completed. Curiously, the ALJ found the assessment was "not persuasive," at least in part, because "[a]lthough Dr. Gasterf (sic) has established a treatment relationship with claimant, Dr. Gasterf (sic) does not claim to have treated claimant on a frequent basis for the impairments claimant alleges have resulted in disability. . . . It would appear that if claimant were experiencing severe disability, she would have seen Dr. Gasterf (sic) on a more frequent basis." (Tr. 25).

Even a cursory examination of the record reveals the full extent of the treatment relationship between Claimant and Dr. Gastorf. This Court is dubious the ALJ even reviewed the record or the erroneous nature of his statements would have been readily revealed. Claimant was attended by Dr. Gastorf as her primary treating physician on over 20 occasions throughout the treating period as set forth in detail in this Order. By myopically restricting his examination to the assessment form, the ALJ established an impossible standard that a treating physician set forth the entirety of her treating relationship with a patient in a standardized format which does not lend itself to such detail.

Many of Dr. Gastorf's findings on the assessment form are well supported by medical evidence which she largely developed during her treating relationship with Claimant. It is well-established that any time an ALJ rejects the opinion of a treating physician or

fails to give it controlling weight, he must provide substantiation for that rejection. An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons"

for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ's opinion lacks any explanation for the rejection of Dr. Gastorf's opinion, other than the oft-repeated statement that her opinions are not supported or "do not merit substantial evidentiary weight." Continued redundancy of these "catch phrases" does not sustain the burden upon the ALJ to justify his rejection of the treating physician's opinions. The ALJ's findings are wholly lacking in the analysis required for failing to afford Dr. Gastorg's opinions controlling or, for that matter, any weight. The matter must, therefore, be remanded for further findings consistent with the prevailing case authority.

Because consideration of this issue is dispositive of this review, this Court declines to discuss the other stated bases proffered by Claimant in this appeal. On remand, however, Defendant should consider Claimant's other arguments in the re-hearing and decision made on Claimant's application.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

DATED this 6th day of November, 2007.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE